**UNITED STATES of America,
Plaintiff, Appellant,**

v.

**Robert E. MEYER,
Defendant, Appellee.**

**No. 86–1731.**

United States Court of Appeals,
First Circuit.

Argued Dec. 1, 1986.

Decided Jan. 14, 1987.

Robert V. Zener with whom John F. Cordes, Appellate Staff, Civ. Div., Dept. of Justice, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief, for appellant.

Robert E. Meyer, pro se.

Before CAMPBELL, Chief Judge, COFFIN and SELYA, Circuit Judges.

SELYA, Circuit Judge.

■ The sole issue to be decided in this appeal is whether the five-year statute of limitations for enforcement of civil penalties, 28 U.S.C. § 2462, as applied to sanctions imposed under the Export Administration Act's antiboycott regulations, is triggered on the date the predicate violation occurs or on the date the penalty is subsequently imposed. Reluctant though we may be to create a split among the circuits, we adopt the latter view and therefore reverse the district court.

### I.

The pertinent facts can be catalogued with dispatch. During a period of time commencing on or about January 18, 1978 and concluding on or about September 21, 1978, Robert E. Meyer, appellee herein, allegedly disobeyed a series of antiboycott regulations promulgated under the Export Administration Act (EAA), currently codified at 50 U.S.C.App. §§ 2401–2420 (1982), as amended by the Export Administration Amendments Act, Pub.L. No. 99–64, 99 Stat. 120 (July 12, 1985). The government charged that Meyer flouted 15 C.F.R. § 369.2(d)(1) by furnishing boycott information to Saudi Arabia on three separate occasions, and ran afoul of 15 C.F.R. § 369.4 by failing to report receipt of a request for boycott-related information to the United States Department of Commerce (Department). Each of these boycotts supposedly occurred in connection with Meyer's herculean efforts as legal counsel for Zemco Corporation vis-a-vis the desired registration of three of the company's trademarks in Saudi Arabia.

The mills of the bureaucrats grind slow, if exceedingly fine. It was not until July 2, 1981, that the Department initiated administrative enforcement proceedings against Meyer by issuing a "charging letter" pursuant to 15 C.F.R. § 388.4(a). On July 22, 1983, after two years of skirmishing, the administrative law judge (ALJ) assigned to the matter rendered an initial decision. The ALJ found Meyer to have transgressed the EAA and its implementing regulations; pursuant to 15 C.F.R. § 387.1(b)(3), he imposed a civil penalty of $5,000. Meyer's further intra-agency protests were bootless. On August 10, 1984, the Department affirmed the decision of the ALJ in all respects.

Little daunted, Meyer refused to pay the sanction. So, on December 31, 1985—more than five years after the infractions themselves occurred, but within five years of the assessment of the penalty—the Department brought an enforcement suit in the United States District Court for the District of Massachusetts. *See* 50 U.S.C.App. § 2410(f). The district court, however, dismissed the action as barred by the five-year limitations period embodied in 28 U.S.C. § 2462, relying upon the Fifth Circuit's opinion in *United States v. Core Laboratories, Inc.*, 759 F.2d 480 (5th Cir.1985).

The *Core* panel held that the five-year statute of limitations, 28 U.S.C. § 2462, which is concededly applicable to recovery of civil penalties under the EAA, runs from the date of the predicate violation, rather than from the date of administrative assessment of the sanction.[1] Yet, with respect, we find the Fifth Circuit's reasoning—the core of *Core*, as it were—to be unconvincing. A critical examination of 28 U.S.C. § 2462, its relationship to the penalty assessment and enforcement mechanisms of the EAA, the relevant caselaw, and the broader policies which undergird statutes of limitations, leads us to an opposite result.

### II.

We begin with an overview of the pertinent statutes. The EAA prescribes no limit on the time within which either an administrative claim to impose a civil penalty or a suit to enforce such a penalty must be

---

**1.** *Core* further determined that the limitations clock is not automatically stopped during the pendency of administrative proceedings, absent a showing of "improperly dilatory tactics" on the part of the defendant. 759 F.2d at 484. Inasmuch as we hold that this suit was brought within the statutory period as we measure it, we express no opinion on the tolling question.

brought. Consequently, the litigants agree that we must look to 28 U.S.C. § 2462 for the applicable statute of limitations. Section 2462 states in relevant part:

[A]n action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued....

28 U.S.C. § 2462.

Both parties concede that, as applied to the EAA, this statute at least requires that any administrative action aimed at imposing a civil penalty must be brought within five years of the alleged violation.[2] Although the analytical underpinnings of this interpretation seem somewhat wobbly, the view is eminently reasonable as a matter of policy and is supported by two distinct pronouncements of subsequent legislative committees that chose to comment on the matter. *See post* at 915–16 & n. 3. Any possible question along these lines need not further detain the court, however, as the record in this case reveals that the Department initiated administrative proceedings against Meyer well within this time frame. What remains for resolution is whether § 2462 affords an *additional* five year period following final administrative assessment of a civil penalty during which the government may sue to enforce the sanction. If the statute so provides, then the government's action to inflict the $5,000 penalty upon Meyer, brought within 17 months of the date when the final administrative pronouncement issued, was timely filed. We hold that 28 U.S.C. § 2462 is designed to operate in exactly that fashion.

Under the precise phraseology of § 2462 itself, the limitations period on the government's enforcement action began to run on the "date when the claim first accrued." Although there is no dearth of authority construing the term, the standard definition of the concept of accrual is to the effect that "[a] cause of action 'accrues' when a suit may be maintained thereon." Black's Law Dictionary 19 (5th ed. 1979). *See Mack Trucks, Inc. v. Bendix Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 20 (3d Cir.1966) (a cause of action "accrues" only with the occurrence of the last significant event necessary to make the claim suable), *cert. denied*, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); *cf. United States v. Hughes House Nursing Home, Inc.*, 710 F.2d 891 (1st Cir.1983) (in Medicare reimbursement setting, government's cause of action to recover overpayment "accrues" and statute of limitations starts to run only when final audit has occurred and retroactive administrative adjustments have been made). In the case at bar, it is abundantly clear that no suit to recover a civil penalty can be mounted under the EAA unless and until the penalty has first been assessed administratively. In this vein, the law declares in the plainest of terms that "in the event of the failure of any person to pay a penalty imposed pursuant to [the antiboycott provisions of the EAA], a civil action for the recovery thereof may ... be brought in the name of the United States." 50 U.S.C.App. § 2410(f). This language alone strongly suggests—indeed, requires—that the Department refrain from initiating a civil suit until the appropriate administrative authority has imposed a sanction which the respondent has thereafter refused to satisfy.

Such a view of the EAA universe likewise accords with the obvious proposition that a claim for "enforcement" of an administrative penalty cannot possibly "accrue" until there is a penalty to be enforced. *Cf. Hughes House Nursing Home*, 710 F.2d at 894 (Nothing in Medicare law "gives the government any right to collect

---

**2.** This interpretation finds substantial support in a decision of the Second Circuit interpreting 28 U.S.C. § 791, the forerunner to § 2462. In *Lancashire Shipping Co. v. Durning*, 98 F.2d 751, 753 (2d Cir.), *cert. denied*, 305 U.S. 635, 59 S.Ct. 102, 83 L.Ed. 408 (1938), the court held that the time requirement of the statute was satisfied

when the administrative proceeding—though not the judicial action—was brought within the prescribed limitations period: "[I]f the administrative action resulting in the imposition of a fine was such a suit or proceeding as the statute covers, it was commenced within the five year period and the statute does not apply."

any additional overpayment ... before a final audit, formally determining its existence, takes place."). The use of the word "enforcement" in 28 U.S.C. § 2462 is not without significance; the noun by definition ("compulsion ... forcible urging ... the compelling of the fulfillment," Webster's Third New International Dictionary 751 (1981)) presupposes the existence of an actual penalty to be enforced. And, lest any residue of doubt remain, the EAA further states that "[e]xcept as provided in this subsection and in subsection (d) [relating to payment of penalties for export license violations], no such liability shall be asserted, claimed, or recovered upon by the United States in any way unless it has previously been reduced to judgment." 50 U.S.C.App. § 2410(f). Therefore, inasmuch as the government was effectively prohibited from commencing suit in the district court until a penalty had been assessed and reduced to an (unsatisfied) administrative judgment, it would be illogical to say that its claim for enforcement "accrued" prior to that point in time.

We recognize that *Core*, 759 F.2d at 482, placed considerable emphasis on various excerpts from the legislative history of the 1965 amendments to the EAA. (These amendments, of course, were the very vehicle by which civil penalty provisions were added to the Act.) The Senate Report noted:

> The bill does not prescribe any period following an offense within which the civil penalty must be imposed. It is intended that the general 5–year limitation imposed by section 2462 of title 28 shall govern. Under that section, the time is reckoned from the commission of the act giving rise to the liability, and not from the time of imposition of the penalty, and it is applicable to administrative as well as judicial proceedings.

S.Rep. No. 363, 89th Cong., 1st Sess. 7, *reprinted in* 1965 U.S.Code Cong. & Adm. News 1826, 1832. Substantially the same statement appeared in the House report. H.R.Rep. No. 434, 89th Cong., 1st Sess. 5 (1965).

■ Where, as here, the language of a statute seems clear and unambiguous, courts should be extremely hesitant to search for ways to interpose their own notions of Congress's intent. *See Yates v. United States*, 354 U.S. 298, 305, 77 S.Ct. 1064, 1069, 1 L.Ed.2d 1356 (1957) (where no ambiguity in words of statute, judicial construction unnecessary); *Browder v. United States*, 312 U.S. 335, 338, 61 S.Ct. 599, 601, 85 L.Ed. 862 (1941) (no single argument has more persuasive force in interpreting a statute than the plain meaning of the words of the enactment). We recall the Court's statement that "[i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Resort to legislative history is unnecessary, indeed unbefitting, when there is no ambiguity to be clarified. *Cf. Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 492, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). As we have already found that 28 U.S.C. § 2462 is susceptible to but a single reasonable reading, reliance on congressional source materials seems both inappropriate and ill-advised.

We note further that, as an interpretation of the effect of 28 U.S.C. § 2462 on EAA enforcement actions, the committee report is a rather slender reed; as the committee itself acknowledged, the EAA contains no internalized statute of limitations. S.Rep. No. 363, *supra*, at 7. Thus, the commentary in the report, viewed in its truest perspective, amounts to little more than an opinion registered by the committee on how it believed that § 2462 would be interpreted by the courts in the context of EAA enforcement actions—a "legislative dictum," to coin a phrase. Realistically, such speculation cannot carry much cargo. As the Supreme Court has admonished, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one," *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*,

447 U.S. 102, 117, 100 S.Ct. 2051, 2061, 64 L.Ed.2d 766 (1980) (citations omitted). Under ordinary circumstances, *"post hoc* statements of a congressional Committee are not entitled to much weight," *Weinberger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 1518, 71 L.Ed.2d 715 (1982). Such maxims apply with particular force when a congressional committee offers what amounts to an advisory opinion of a purely legal nature—an opinion on the meaning, intendment, and applicability of a general statute enacted many years before. Given that the legislative guess as to how § 2462 will operate does violence to the plain meaning of the statute, it would be wrong to pay homage to the committee report in our current deliberations.[3]

### III.

Our reading of the plain language of the statute does not stand unassisted. Review of the relevant caselaw produces abundant support for such a commonsense construction of 28 U.S.C. § 2462. Outside of the Fifth Circuit,[4] no court has ever held that, in a case where an antecedent administrative judgment is a statutory prerequisite to the maintenance of a civil enforcement action, the limitations period on a recovery suit runs from the date of the underlying violation as opposed to the date on which the penalty was administratively imposed. All of the analogous authority appears to concur with the general rule that "[i]f disputes are subject to mandatory administrative proceedings [before judicial action may be taken], then the claim does not accrue until their conclusion." *Lins v. United States,* 688 F.2d 784, 786 (Ct.Cl.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983).

By all odds, the starting gate for any careful look at the precedents must be the Supreme Court's seminal treatment of virtually this precise issue in *Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967). In *Crown Coat,* a private party brought suit to adjust a government contract. The right to sue had been made expressly subject to the exhaustion of administrative remedies as a condition precedent to the bringing of court action. The applicable statute of limitations mirrored 28 U.S.C. § 2462; it read that a civil action "shall be barred unless the complaint is filed within six years after the right of action first

---

**3.** Then again, even if we were inclined to treat the committee report as somewhat authoritative, we would be no less disposed to consider and credit the contradictory construction of the statute offered by a still-subsequent legislative committee. Shortly after the Fifth Circuit's decision in *Core,* Congress issued a Conference Report on the 1985 amendments to the EAA. P.L. 99–64, 99 Stat. 120. In what appears to be a response to *Core,* that Report stated:

> [T]he conferees also wish to emphasize that the Commerce Department should continue to bring administrative proceedings seeking to impose civil penalties and other administrative sanctions. In this regard, some confusion has arisen concerning the time limits for initiating administrative actions and on bringing actions in Federal court to collect civil penalties.
>
> The intent of the committee of conference is that the Commerce Department must bring its administrative case within 5 years from the date the violation occurred. Thereafter, if it is necessary for the Government to seek to enforce collection of the civil penalty, the complaint must be filed in Federal court within 5 years from the date the penalty was due,

but not paid. Any other interpretation would have the Commerce Department discover, investigate, prosecute, and file a complaint in U.S. District Court to collect the penalty imposed, but not paid, in the administrative proceeding all within 5 years from the date of the violation. In many instances ... such a task would be impossible.

H.R.Rep. No. 180, 99th Cong., 1st Sess., *reprinted in* 131 Cong.Rec. H4905, H4923 (daily ed. June 26, 1985). Although as a matter of jurisprudence this committee language is entitled to no weight (for the same reasons as we have stated in the text), it enjoys the decided advantage of representing a more rational (and recent) reading of how 28 U.S.C. § 2462 must apply to EAA enforcement actions. In short, to the extent that the 1965 legislative history ever possessed convincing force—and, on this point, we think it had none—it must certainly yield to its more recent counterpart.

**4.** The *Core* court, 759 F.2d at 483, relied in part on a district court decision within the circuit which reached the same result. *See United States v. Appling,* 239 F.Supp. 185 (S.D.Tex. 1965).

accrues...." 28 U.S.C. § 2401(a). The plaintiff had brought an action more than six years after the occurrence of the events underlying its contract claim, but less than six years from the issuance of a final administrative decision on that claim. Holding the suit to have been prosecuted in due season under 28 U.S.C. § 2401(a), the Court declared that

> the "right of action" of which § 2401(a) speaks is not the right to administrative action but the right to file a civil action in the courts against the United States.... [T]he contractor's claim was subject only to administrative, not judicial, determination in the first instance, with the right to resort to the courts only upon the making of that administrative determination.

> \*    \*    \*    \*    \*    \*

> ... It is only then [when the mandatory administrative decision occurs] that his claim or right to bring a civil action against the United States matures and ... that he has "the right to demand payment ... [,] the hallmark of accrual of a claim in this court."

*Crown Coat*, 386 U.S. at 511–12, 514, 87 S.Ct. at 1181–82, 1183 (citation omitted).

The appellee strives mightily to differentiate *Crown Coat*. Although placing principal reliance on *Core* in this wise, he also urges that a pair of Supreme Court cases, viz., *Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953), and *McMahon v. United States*, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951), support his position. (The *Core* court, it should be remarked, cited extensively to *Unexcelled*. 759 F.2d at 484.) A critical reading of *Unexcelled* and *McMahon*, however, reveals each decision to be distinguishable in material respects; neither possesses the craftsmanship or fit of *Crown Coat* as a model for the instant case—and neither is as up-to-date.

The Court in *Unexcelled* construed a two-year statute of limitations on civil actions brought under the Walsh-Healey Act as running from the date of the violation, 345 U.S. at 65–66, 73 S.Ct. at 583–84—but in circumstances where, unlike the EAA environment, the government was at liberty to file suit without any antecedent administrative proceeding. The language of the opinion makes it crystal clear that this was a distinction of no small significance. *Id.* at 66, 73 S.Ct. at 584. And, lest any doubt linger, the Court itself supplied the sockdolager when it subsequently limited the precedential sweep of *Unexcelled* on precisely these grounds:

> *Unexcelled* [does not] control this case.... [I]n *Unexcelled*, where the statutory period was held to run from the date of the breach of statutory duty under the Walsh-Healey Act ... rather than from the date of the administrative determination of the liquidated damages due the Government, it seems apparent that the United States, to which damages were payable, could have brought suit without first resorting to administrative remedies.

*Crown Coat*, 386 U.S. at 519, 87 S.Ct. at 1186. As in *Crown Coat*, and unlike *Unexcelled*, the EAA expressly conditions the right of the government to sue on the respondent's failure to pay an administratively assessed penalty which has been reduced to final judgment.

Nor does *McMahon* furnish any solid basis for interpreting § 2462 in a manner antithetic to *Crown Coat*. In *McMahon*, an injured seaman brought suit in admiralty against the United States for negligence and unseaworthiness. The Suits in Admiralty Act, 46 U.S.C. § 745, prescribed a two-year statute of limitations for such actions, and the Clarification Act, 50 U.S.C. App. § 1291(a), permitted court action only if the claim had been administratively disallowed. The Court held that the seaman's claim accrued when he was injured, not when the administrative disallowance took place. *McMahon*, 342 U.S. at 27, 72 S.Ct. at 190. The Court nevertheless observed that the regulations in question provided that any claim which was not acted upon administratively within sixty days of filing would be deemed to be disallowed. *Id.* at 28, 72 S.Ct. at 19. The Supreme Court has

since limited the holding in *McMahon* to cases presenting this kind of distinguishing feature:

> The purpose of the Clarification Act was to prevent unnecessary litigation by providing for notice of injury to the United States and for the opportunity to settle claims administratively. But while suit was permitted only if a claim had been "disallowed," the applicable regulations provided that if a claim was not rejected within 60 days after filing, it would be deemed to have been administratively disallowed and the claimant would be free to enforce his claim. *There was no chance for administrative action to consume the entire limitations period and therefore bar all resort to the courts.*

*Crown Coat,* 386 U.S. at 517, 87 S.Ct. at 1185 (emphasis supplied).

As in *Crown Coat,* the enforcement provisions of the EAA contain no counterpart to the sixty day limit embodied in the Clarification Act. In the EAA context—where completion of administrative proceedings is an absolute prerequisite to the bringing of an enforcement action—a restrictive construction of 28 U.S.C. § 2462 would create a real chance that precisely the happenstance against which the Court warned could come to pass. Given this tailoring of the circumstances, *Crown Coat* fits cases like the one at bar snugly.

We find the *Crown Coat* analogy to be compelling in interpreting the parallel precincts of 28 U.S.C. § 2462 and its application to the EAA, and we view its force to be undiminished by a fair reading of either *Unexcelled* or *McMahon.* In turn, we note approvingly the course charted by the Seventh Circuit in *United States Department of Labor v. Old Ben Coal Co.,* 676 F.2d 259 (7th Cir.1982), a case closely in point. There, a federal agency sued to collect a penalty assessed against a colliery for infractions of the Federal Coal Mine Health and Safety Act, 30 U.S.C. §§ 801 *et seq.* The district court dismissed the action as time-barred under 28 U.S.C. § 2462, suit having been brought more than five years after the underlying statutory violations had occurred. The court of appeals reversed, holding that where administrative proceedings are required before a court action may be brought, the limitations period prescribed by § 2462 starts to run only upon the conclusion of such proceedings:

> A statute of limitations cannot begin to run until there is a right to bring an action.... The statute of limitations at 28 U.S.C. § 2462 does not begin to run until "the date when the claim first accrued." In the context of the Coal Act the district court claim accrues only after the administrative proceeding has ended, a penalty has been assessed, and the violator has failed to pay the penalty. The Coal Act states specifically that the Secretary shall file a petition for enforcement of the order assessing the civil penalty only if the person against whom the penalty was assessed fails to pay it within the time prescribed in the order.... Obviously an administrative agency order must exist before the Secretary can file a district court action to enforce it.

*Old Ben,* 676 F.2d at 261 (citations omitted).[5]

The logic of *Old Ben* seems compelling. And, it tracks harmoniously with the Court's rationale as expressed in *Crown Coat,* and with the approach which we previously embraced in *Hughes House Nursing Home, supra.* To the contrary, the understanding of 28 U.S.C. § 2462 urged by Meyer (and adopted in *Core*) creates a wretched sort of anomaly. Under that construction, the Department's enforcement action became time-barred no later than

---

5. We find no merit in the appellee's suggestion that this aspect of *Old Ben* amounts to mere dicta. To be sure, the Seventh Circuit's interpretation of 28 U.S.C. § 2462 was one of a matched set of alternate holdings—the other being that § 2462 is inapplicable to Coal Act cases. *Old Ben,* 676 F.2d at 261. Were the independent legal sufficiency of one holding enough to transform a second holding into dictum, however (under a kind of "but for" analysis), then both "holdings" could arguably be read as dicta and thereby avoided altogether. Such sophistry deserves no further response.

September 21, 1983—approximately one month after Meyer filed his administrative appeal of the ALJ's initial decision and over ten months before the Secretary issued his final affirmance. Under this interpretation, then, the statute of limitations would have expired *before* the right to sue arose; it would have been impossible for the government seasonably to file its action. In the absence of some clear demonstration that Congress intended those charged with civil enforcement of administrative penalties to chase themselves along the rim of such a grotesque analemma—and no satisfactory evidence of such an unlikely intention has come to light—we will not gratuitously read this sort of anomaly into the statutory scheme. Such a self-abnegating result would be thoroughly unacceptable.

It is settled beyond peradventure that legislation "should be interpreted to avoid ... unreasonable results whenever possible." *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1536, 71 L.Ed.2d 748 (1982). As one respected scholar has observed, "[i]t has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation...." 2A Sands, Sutherland Statutory Construction § 45.12 at 54 (4th ed. 1984). The present case affords fertile soil in which such seeds of wisdom should take root.

The concern that 28 U.S.C. § 2462 could pluck an enforcement suit from the vine before it had even ripened enough to be brought is by no means theoretical. According to the Fifth Circuit's construction of 28 U.S.C. § 2462, the Department would have a total of five years from the date of a statutory violation within which to uncover the infraction, conduct the necessary

investigation, issue a charging letter, and wend its way through the (often lengthy) administrative process. A suspected violator would, in the straitened circumstances made possible by the *Core* court, have considerable incentive to employ the available procedures to work delay—not a particularly difficult task in view of the marked resemblance between the conduct of modern administrative litigation and King Minos's labyrinth in ancient Crete.

In a situation like that at bar, when the Department issues a charging letter, the imperatives of the Administrative Procedure Act (APA) come into play.[6] From that point on, the timing of the case is largely beyond the Department's control. Additionally, regulations which implement the APA's adjudicatory rules, designed to ensure procedural fairness, afford the private litigant a wide range of protections during the administrative processing of his case. By way of illustration, these rules provide a full panoply of discovery devices. *See* 15 C.F.R. § 388.9(b) (interrogatories, requests for admission, and production of documents), § 388.9(c) (depositions), § 388.-10 (subpoenas), § 388.11 (protective orders) (1986). At the time of this case's administrative development,[7] there were no temporal constraints governing the duration of these pre-hearing proceedings; no limits existed as to the time administrative adjudication might take, 15 C.F.R. § 388.13, or as to when an ALJ had to render his decision, 15 C.F.R. § 388.16. Moreover, even after the ALJ has issued an initial decision, the Department cannot necessarily sue to enforce the resultant penalty; the respondent enjoys a right of appeal to the Assistant Secretary of Commerce for Trade Administration. *See* 15 C.F.R. § 388.22. These kinds of procedures necessarily take time;

---

6. By virtue of the provisions of 50 U.S.C.App. § 2410(c)(2)(B), administrative proceedings alleging violations of the antiboycott regulations issued under the EAA are governed by 5 U.S.C. §§ 554–557.

7. Congress recently amended the EAA's enforcement provisions anent export control violations to prescribe a one-year time limit, starting from the date on which an answer to a charging letter is filed. During this period, both the ALJ and the Assistant Secretary must issue their respective decisions. 50 U.S.C.App. § 2412(c)(2). *See also* 15 C.F.R. § 388.16(e) (1986). Yet to this date, Congress has created no such time limit for cases involving antiboycott infractions.

indeed, in the instant case, administrative activity consumed over three years.

Given the manifold opportunities for (arguably legitimate) delay which inhere both as a matter of trial tactics and in the innards of the administrative process, it strikes us as implausible that Congress intended to endow private litigants with so powerful an incentive for procrastination. And, it seems altogether illogical for Congress to have enacted a statutory scheme in which the Department would have no less than five years to initiate EAA enforcement proceedings, but would be unable to realize on the purpose of such proceedings if an administrative process essentially beyond its control happened to run (or was manipulated so as to run) beyond the cut-off point for the institution of suit.

## IV.

The other cases relied on by the Fifth Circuit in *Core* and embraced by Meyer on this appeal are simply off the mark. Most of them involve situations bereft of the key ingredient shared by *Crown Coat* and by the EAA: the necessity for allowing an administrative proceeding to run its course as a precondition to the commencement of suit.[8] A second corps of *Core* cases involved situations where prosecutorial determinations, rather than adjudicatory administrative proceedings, constituted the precondition to suit. *E.g., United States v. Athlone Industries, Inc.*, 746 F.2d 977 (3d Cir.1984) (antecedent action mandated by the Consumer Product Safety Act required executive agency alone to consider certain factors "[i]n determining the amount of any penalty to be sought upon commencing an action to assess a penalty...." 15 U.S.C. § 2069(b)); *United States v. Advance Machine Co.*, 547 F.Supp. 1085

(D.Minn.1982) (same). *United States v. Ancorp National Services, Inc.*, 516 F.2d 198 (2d Cir.1975) and *F.T.C. v. Lukens Steel Co.*, 454 F.Supp. 1182 (D.D.C.1978) are of the same genre. In those cases, the law required that, as an early step in recovering penalties for violations of cease and desist orders, the Federal Trade Commission must "certify the facts to the Attorney General, whose duty it shall be to cause appropriate proceedings to be brought...." 15 U.S.C. § 56 (1970).

Administrative determinations of this ilk, however necessary they may be to the prosecution of enforcement actions, are not in any sense adjudicative. At bottom, they comprise nothing more or less than decisions to bring suit. In significant contrast to the adjudicative administrative proceedings required before EAA penalties may be imposed and enforced, these determinations fall entirely within the suzerainty of the government. Were the statute of limitations to run against, say, an F.T.C. action, the Commission would have only its own indecision to blame. The EAA analogue to this kind of administrative prerequisite is not the imposition of a statutory penalty by an ALJ after notice, discovery, and hearing; rather, it is the Department's initial issuance of a charging letter. No one disputes that the limitations period on wholly administrative action runs from the time of the underlying violation rather than from the government's decision to prosecute the charge. Indeed, if statutes of limitations did not begin running until a party resolved to bring suit or otherwise take affirmative action to vindicate its rights, no statute of limitations would ever lapse; the promise of repose would be as empty as a beggar's purse. To liken prose-

---

**8.** The cases which fall into this classification include *Western Pacific Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280 (9th Cir.1984); *United States v. Witherspoon*, 211 F.2d 858 (6th Cir.1954); *Smith v. United States*, 143 F.2d 228 (9th Cir.), *cert. denied*, 323 U.S. 729, 65 S.Ct. 65, 89 L.Ed. 585 (1944); *United States v. Springer & Lotz*, 69 F.2d 819 (2d Cir.1934); *The Ng Ka Py Cases*, 24 F.2d 772 (9th Cir.1928); *United States v. Firestone Tire & Rubber Co.*, 518 F.Supp. 1021

(N.D.Ohio 1981); *United States v. Fraser*, 156 F.Supp. 144 (D.Mont.1957), *aff'd*, 261 F.2d 282 (9th Cir.1958); *United States v. Covollo*, 136 F.Supp. 107 (E.D.Pa.1955); *United States v. Wilson*, 133 F.Supp. 882 (N.D.Cal.1955); *United States v. Smith Kline & French Co.*, 184 F. 532 (E.D.Pa.), *aff'd*, 191 F. 573 (3d Cir.1911), *cert. denied*, 225 U.S. 710, 32 S.Ct. 840, 56 L.Ed. 1268 (1912); *United States v. One Dark Bay Horse*, 130 F. 240 (D.Vt.1904).

cutorial decisionmaking to mandatory administrative adjudication is to compare plums with pomegranates.

Other authorities relied upon, variously, by the Fifth Circuit in *Core* and/or by the appellee, supply no sturdier support for a narrow reading of 28 U.S.C. § 2462. In *Durning v. McDonnell*, 86 F.2d 91 (2d Cir.1936), *cert. denied*, 300 U.S. 682, 57 S.Ct. 753, 81 L.Ed. 885 (1937), for example, more than five years had elapsed since the assessment of the administrative penalty. *Id.* at 92.[9] Similarly, *H.P. Lambert Co. v. Secretary of Treasury*, 354 F.2d 819, 822 (1st Cir.1965) and *A/S Glittre v. Dill*, 152 F.Supp. 934, 940 (S.D.N.Y.1957) (dictum), were cases in which the underlying violations had occurred more than five years prior to the dates on which *administrative* proceedings were begun; the cases are, therefore, inapposite to the question of the tempestivity of a suit brought upon the heels of administrative proceedings which were timely instituted. The last remaining case, *United States v. C & R Trucking Co.*, 537 F.Supp. 1080, 1083 (N.D.W.Va. 1982), is rather uninformative. Even if the implication of *C & R* is that 28 U.S.C. § 2462 runs from the date the violation itself occurred, the case is of scant solace to the appellee. There, the government had initiated its Clean Water Act enforcement suit within five years next following both the commission of the infractions and the ensuing imposition of penalties. *Id.* at 1083. *C & R* thus avoids the thornier issue which confronts this court, and its reasoning reduces in relevance accordingly.

## V.

To close the circle completely, we must remark one final point: an examination of the policies which undergird statutes of limitations reinforces the "plain language" interpretation of 28 U.S.C. § 2462 which flows so naturally from the terminology of the statute. As the Court has indicated:

Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

*Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 256 (1965) (quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)).

In the instant case, it is evident that 50 U.S.C.App. § 2410(f) erected a barrier to the government's ability to bring suit pending final administrative assessment of the civil penalty. Thus, in the words of the *Burnett* Court, the United States has not "slept on [its] rights but, rather, has been prevented from asserting them." 380 U.S. at 429, 85 S.Ct. at 1055. And, once the final component of the government's right of action (*i.e.*, the fixing of the penalty) was set in place, the United States moved with all the promptness that § 2462 demanded. Put another way, once the Department's "claim" against the appellee "accrued," it sued for "enforcement" within the five years next following. There was no unfairness as to Meyer; after all, he was aware no later than the time the charging letter was sent (*i.e.*, within roughly three years of the series of dates when the objectionable deeds were perpetrated) that the government was seeking to punish him for his conduct. The bringing of the instant suit, after the administrative process had run its course, could have come as no surprise.

---

**9.** In any event, the *Durning* panel held the statute of limitations at issue to be inapplicable. 86

F.2d at 92.

Moreover, there is no undue danger in this scenario that evidence will grow stale, documents be discarded, or witnesses vanish. The government, if it suspects that a wrong has been committed, has no discernible incentive to delay institution and prosecution of administrative charges. Ordinarily, any such footdragging would tend to reduce the Department's chances of proving its case and collecting monetary sanctions. All in all, construing § 2462 to require the initiation of administrative proceedings within five years of the date of the alleged violation, *see ante* at 914 & n. 2, abundantly satisfies any legitimate concerns for repose, fair notice, and preservation of evidence. Accordingly, there is no reason for a court to strain to reach an interpretation of the statute at odds with that suggested by its unambiguous language.

## VI.

In this case, all roads lead to Rome. The phraseology of 28 U.S.C. § 2462, its juxtaposition and interrelationship with the mechanics of statutes like the EAA, the better-reasoned caselaw, and policy concerns (to the extent appropriate) all conduce to one and the same result. For the reasons elucidated above, we hold that when, as under the EAA, final assessment of an administrative penalty is a statutory prerequisite to the bringing of an action judicially to enforce such penalty, the statute of limitations prescribed by 28 U.S.C. § 2462 does not begin to run, so long as administrative proceedings have been seasonably initiated, until the same have been concluded and a final (administrative) decision has resulted. Under this construction of the statute, the government's enforcement action for penalties assessed against the appellee, Robert E. Meyer, was timely filed. It follows that the order of the district court dismissing the complaint as time-barred was erroneous, and the resulting judgment in favor of the appellee must be

*Vacated. The case is remanded to the district court for further proceedings.*