**FEDERAL ELECTION COMMISSION,**
Plaintiff,

v.

**NATIONAL REPUBLICAN SENATORIAL COMMITTEE, Defendant.**

Civ. A. No. 93–1612.

United States District Court,
District of Columbia.

Feb. 24, 1995.

Lawrence Mark Noble, Richard Blair Bader, Kenneth E. Kellner, Stephen E. Hershkowitz, Federal Elec. Com'n, Washington, DC, for plaintiff.

Jan W. Baran, Thomas Wesley Kirby, Wiley, Rein & Fielding, Washington, DC, for defendant.

### MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Before the Court is defendant's motion for summary judgment and dismissal on the grounds that this action is barred by the five year statute of limitations. For the reasons set forth in this opinion, defendant's motion for summary judgment is granted in part and denied in part.

## I. *Background*

The activities at issue in this case date back to the 1985–1986 congressional campaign season. The Federal Election Commission (hereafter "FEC" or "Commission") alleges that defendant National Republican Senatorial Committee ("NRSC") violated the Federal Election Campaign Act ("FECA"), 2 U.S.C. § 431 *et seq.*, by making unlawful excessive contributions of $183,563 to the "Jim Santini for Senate" political committee, and by failing to report such contributions to the FEC.[1] The NRSC allegedly made these contributions after it reached the contribution limits established by the FECA.

Although the events underlying this action occurred between November 1985 and November 1986, complaint ¶¶ 24, 28, this enforcement action was not filed until April 21, 1993. For purposes of the present motion, the Court must examine the period of time between defendant's conduct and the filing of this lawsuit. The FEC took no action until January 9, 1987, when Richard Segerblom filed a sworn, notarized administrative complaint with the Commission, pursuant to 2 U.S.C. § 437g(a)(1). On January 16, 1987, the FEC notified defendant that a complaint had been filed. On July 28, 1987, the FEC voted by an affirmative vote of at least four members, that there was reason to believe that NRSC had violated the contribution and reporting limitations. 2 U.S.C. §§ 441a(h) and 434(b); 11 C.F.R. §§ 110.6(d)(2) and 106.1.

Years passed with minimal action.[2] On January 24, 1989, the Commission voted yet again that there was reason to believe a violation had occurred.[3] Also in 1989, the Commission issued the only subpoena in this case. Later the same year, the NRSC proposed conciliation which the FEC rejected in November 1990, after a seventeen month review. The Commission's general counsel notified defendant by letter dated March 25, 1991, that he was prepared to recommend that the FEC find probable cause to believe that the NRSC violated the FECA. Nearly a year later, on March 10, 1992, the Commission found such probable cause.[4]

The FEC filed this action on April 21, 1993; seven years after the events at issue and six years after Segerblom's complaint was filed. The Commission claims that it "seasonably" proceeded in this matter. Opposition, p. 10. In fact, three congressional and two presidential election seasons faded into memory while the FEC ruminated. The NRSC now moves to dismiss on the grounds that the applicable five year statute of limitations expired prior to the filing of this lawsuit.

## II. *Analysis*

Fed.R.Civ.P. 56(c) permits a court to grant summary judgment where the evidence in the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

### A. *Applicability of 28 U.S.C. § 2462 to FECA.*

 Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued * * *

28 U.S.C. § 2462. Section 2462 provides a catch-all statute of limitations in situations where Congress did not specifically include a time limitation in the statute. Congress long ago recognized the need for a statute of repose because "after the passage of time evidence has been lost, memories have faded, and witnesses have disappeared." *3M Co. v.*

---

1. These alleged contributions included approximately $71,627 in contributions from NRSC's 1986 Direct–To operation, $32,575 in earmarked contributions from NRSC's Majority '86 operation, and $79,361 in in-kind contributions.

2. The NRSC claims that at one point almost two years elapsed between communications from the FEC to the NRSC.

3. In its letter informing the NRSC of the second "reason to believe" finding, the FEC indicated that this finding was based on information in its possession no later than September 22, 1987.

4. The Commission presents no evidence indicating that the NRSC impeded or delayed the investigation in any way.

*Browner*, 17 F.3d 1453, 1457 (D.C.Cir.1994) (citing *Order of R.R. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)) (internal quotation marks omitted). Such a statute of repose applies with particular force to penalty actions. The equitable need to eliminate older penalty claims must be balanced against the general Supreme Court's competing requirement that statutes of limitations should be strictly construed in favor of the government. *See e.g. Badaracco v. Commissioner*, 464 U.S. 386, 391, 104 S.Ct. 756, 760–61, 78 L.Ed.2d 549 (1984). At issue is whether § 2462 applies to FECA.

■ The parties agree that FECA contains no statute of limitations, however, they disagree over whether the Court should apply § 2462. Plaintiff argues that the goals and strictures of FECA are incompatible with the five year time limit imposed by § 2462, and the FEC should be free indefinitely to penalize recalcitrant parties. We disagree. The fundamental premise underlying the *3M Co.* decision is that it is inappropriate for a government regulator to wield the threat of an open-ended penalty. This is particularly true in cases where the ongoing threat of penalties may disrupt core First Amendment political activities.

### 1. *Five-year limitations period is consistent with FECA.*

■ In contrast to certain other agencies and regulatory regimes, the FEC is given no power to adjudicate liability or to impose civil penalties for violations of FECA. Instead, the FEC's role is to investigate, 2 U.S.C. §§ 437g(a)(4)(A); to conciliate, 2 U.S.C. § 437g(a)(4)(A); and to determine whether or not to bring a civil enforcement action, 2

U.S.C. § 437g(a)(6)(B). The FEC may not begin an enforcement investigation until *after* it finds reason to believe a violation has occurred. This finding may be based either on a citizen complaint or on information the FEC learns through its normal supervisory responsibilities. 2 U.S.C. § 437g(a)(2). If the FEC finds probable cause to believe that a violation of FECA has occurred, it must attempt to resolve the matter through informal methods before it can bring suit. Thus, enforcement suits are to be used only after the informal conciliation process fails.[5] *See e.g. In re Carter–Mondale Re-election Committee, Inc.*, 642 F.2d 538, 542–43 (D.C.Cir. 1980).

■ Next, the FEC argues that its organization and function is such that no time limit on its actions is appropriate.[6] The FEC stresses three points in this regard. First, the FEC notes that it cannot begin an enforcement investigation until after a complaint is filed by someone or the FEC learns of the possible violation through its normal supervisory responsibilities. This difficulty is one faced by all administrative agencies, and one which was discounted by the D.C. Circuit. "[N]othing in the language of § 2462 even arguably makes the running of the limitations period turn on the degree of difficulty an agency experiences in detecting violations."[7] *3M Co.*, 17 F.3d at 1461 (applying this rule regardless of whether difficulties in detection are caused by an ill-designed or inefficient enforcement program or because the statute itself impedes detection).

■ The FEC contends that even after it is able to initiate an investigation, it must comply with all of the FECA's statutorily required procedures before it can proceed in court. This claim is disingenuous given the

---

**5.** Plaintiff claims that the statute, if applicable, begins to run at this point, but not before.

**6.** The Commission relies heavily on *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), for the proposition that agencies which are statutorily required to discharge certain administrative duties prior to suit should not be subjected to statutes of limitations borrowed from outside their implementing statutes. This reading is too broad. The *Occidental* Court refused to apply a six month state statute of limitations to a remedial federal claim.

Section 2462 was not implicated in *Occidental* because the EEOC did not seek to penalize defendant. Moreover, the short state limitations period was clearly at odds with federal goals; an issue not present here where the Court is asked to implement a much longer limitations period chosen by Congress.

**7.** Logic dictates that those likely to file complaints with the FEC are those most anxious to stop the alleged violations. They have little to gain by waiting years to come forward.

short time periods at issue and the statutory requirement that the FEC investigate complaints "expeditiously." 2 U.S.C. § 437d(a)(9); *Citizens for Percy '84 v. FEC,* 1984 WL 6601, *4 (D.D.C.1984) (five month delay in finding of "reason to believe" cannot be condoned if statute is to have meaning). For example, the FEC must provide a potential defendant with a brief by its general counsel, then allow 15 days for a response, then make a "probable cause to believe" finding and then engage in at least 30 days of informal conference, conciliation, and persuasion before seeking judicial relief. We can discern no reason why this process cannot easily be accomplished by the agency within the five year limitation in § 2462, even with discovery and subpoena enforcement delays of many months or even years.

### 2. Applicability of § 2462 to "dismissal cases".

Finally, the FEC argues that application of § 2462 would as a practical matter preclude enforcement of § 437g(a)(8) "dismissal cases". The FECA provides an unusual enforcement mechanism which permits unsuccessful complainants 60 days within which to appeal dismissal of their complaints to this Court. The FEC argues that as a practical matter, dismissal cases often take years to wind their way through the courts. If the outcome is favorable to complainant there is a possibility that the FEC will be prevented from enforcement because the time limitations of § 2462 will have expired. This is not, however, the situation that confronts the Court in this case. We need not decide at this time whether § 2462 applies to such situations, and if it does, whether the statute of limitations is tolled during the course of the case—the speed of which is at least partially beyond the control of the litigants.

In sum, we apply to the FEC in this case the same statute of limitations which applies "to the entire federal government in all civil penalty cases, unless Congress specifically provides otherwise." *3M Co.,* 17 F.3d at 1461. We believe this application fosters the goal, clearly expressed in the FECA, of facilitating rapid resolution of issues affecting the system by which our national leaders are elected.

### B. Whether this action commenced "within five years from date when claim first accrued".

Having found that § 2462 applies to FECA, the focus of our next inquiry is whether the administrative process undertaken by the FEC tolls the statute of limitations, and to what extent. If the statute is not tolled, there is the additional question of whether the FEC filed the instant law suit within five years from whatever date the claim is held to have accrued.

### 1. Whether FEC administrative procedures toll statute of limitations.

▮▮▮ The five year time limitation of § 2462 is tolled when the administrative proceeding is the type of suit or proceeding the statute was intended to cover.[8] *United States v. Meyer,* 808 F.2d 912, 914 n. 2 (1st Cir.1987) (citing *Lancashire Shipping Co. v. Durning,* 98 F.2d 751, 753 (2d Cir), *cert. denied,* 305 U.S. 635, 59 S.Ct. 102, 83 L.Ed. 408 (1938)). We conclude that the FEC administrative process is not an adjudication. It does not lead to any finding of liability, and the common elements of adjudicatory procedures are not present. For example, the party under investigation has no right to a hearing and no opportunity to question witnesses. *See* 11 C.F.R. § 111 *et seq.* Furthermore, the complaint in this case seeks *de novo* review of the violations, rather than review of the agency's decision. Section 2462 is not affected by an administrative process that lacks the basic elements common to adversarial adjudication. *3M Co.,* 17 F.3d at 1459 n. 11. The FEC's investigation, which began in 1987, therefore did not toll the running of the statute of limitations.

### 2. When the "claim first accrued".

The five year statute of limitation contained in § 2462 did not begin to run until

---

8. If we conclude that the FEC's proceedings toll § 2462, then the statute of limitations issue would be moot since there is no dispute that the

FEC initiated its investigation approximately a year after the purported violations, and initiated this lawsuit a year after finding probable cause.

the claim accrued. When this occurred remains a central issue in the case. The Commission seeks to ignore all events prior to the end of the conciliation period which follows a finding of probable cause. According to the FEC, their claim did not accrue until they had finished their investigation and satisfied the statutory requirements contained in FECA. If the Court adopted their suggestion, our ruling would encourage the FEC to drag out its own investigations by making the agency's conduct an essential element of the violation. This would obstruct not only the general prohibition against open ended penalties, but also FECA's goal of expeditious conflict resolution.

 As noted in *3M Co.*, "[t]he statutory period may begin either when the defendant commits his wrong or when substantial harm matures." 17 F.3d at 1460. A qualification to this rule, recognized in *3M Co.*, applies to "collection claims" which proceed in court only after an administrative proceeding has determined liability and imposed a penalty. 17 F.3d at 1458 n. 8 (citing *Meyer*, 808 F.2d at 914). In such cases, § 2462 allows a further five years from the administrative imposition of the penalty for the agency to file suit in District Court. However, no such extension is appropriate "where prosecutorial determinations, rather than adjudicatory administrative proceedings, constitute[ ] the precondition to suit." *Meyer*, 808 F.2d at 920. Such decisions

> [a]t bottom, ... comprise nothing more or less than decisions to bring suit.... Were the statute of limitations to run ... the Commission would have only its own indecision to blame.

*Id.*

 We conclude that the minimal time periods statutorily imposed for review and conciliation do not transform the decision-making process of the Commission from a prosecutorial decision into a mandatory administrative adjudication. Reduced to its core, the FECA statutory framework essentially formalizes the usual steps involved in preparing a civil suit: gathering evidence, determining whether sufficient evidence exists, and attempting to work with the potential defendant to obviate the need for litiga-

tion. In such cases, a government agency may not extend its own limitations period indefinitely by failing either to begin or to complete its own investigation. Such a result would defeat one of the purposes of a limitations period: "the salutary effect of encouraging law enforcement officials promptly to investigate." *United States v. Marion*, 404 U.S. 307, 323, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). We conclude that the claim first accrued considerably before the end of the administrative process.

**C. Whether notice to defendant tolled statute of limitations.**

 The Commission attempts to salvage its penalty action by claiming that the provisions of § 2462 are satisfied by its notice to defendant that an investigation was underway. The law is to the contrary. In general, the purposes of a statute of limitations—to put the alleged violator on notice and to prevent the loss of evidence—are met only through the formality of an administrative *proceeding*. *See e.g. U.S. Dept. of Labor v. Old Ben Coal Co.*, 676 F.2d 259, 261 (7th Cir.1982) (limitations period tolled when both sides able to introduce evidence); *Mt. Hood Stages v. Greyhound Corp.*, 616 F.2d 394, 401 (9th Cir.), *cert. denied*, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980) (administrative proceeding afforded defendant ample opportunity to prepare its defense before evidence was lost and memories faded). Such an opportunity to obtain and perpetuate evidence is lacking under the FECA. Moreover, adopting the Commission's interpretation would improperly sanction the use of an open-ended penalty. If Congress had intended only to require that the Commission give notice of an intent to seek a penalty within five years, it could have done so. As Congress did not, we conclude that notice of the FEC investigation was insufficient to toll the statute of limitations.

**D. Applicability of § 2462 to actions for declaratory and injunctive relief.**

 Finally, the FEC argues that § 2462, if applicable, applies only to penalty suits and that the statute would not bar plaintiff's request for further declaratory and

injunctive relief. The explicit language of § 2462 supports the FEC's interpretation as it only refers to "enforcement of any civil fine, penalty or forfeiture." *Id.* Moreover, it is well settled that "[t]raditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief." *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) ("suit in equity may lie though a comparable action at law would be barred"); *United States v. Hobbs,* 736 F.Supp. 1406, 1410 (E.D.Va.1990) (§ 2462 does not apply to injunctive relief). We decline to follow the holding in *U.S. v. Windward Properties, Inc.,* 821 F.Supp. 690, 693 (N.D.Ga.1993), which applied the § 2462 statute of limitations to both legal and equitable relief. We believe this holding is contrary to the express language of the statute, which is ordinarily controlling, absent a clearly expressed legislative intention to the contrary. *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Accordingly, the FEC's claim for injunctive and declaratory relief will be allowed to proceed.

### III. *Conclusion*

For the foregoing reasons, the Court grants defendant's motion for summary judgment in part and denies it in part. The Commission is precluded from recovering penalties in this action by the five year statute of limitation contained in 28 U.S.C. § 2462.

> In a country where not even treason can be prosecuted, after a lapse of three years, it could scarcely be supposed, that an individual would remain for ever liable to a pecuniary forfeiture.

*3M Co.,* 17 F.3d at 1457 (citing *Adams v. Woods,* 6 U.S. (2 Cranch) 336, 341, 2 L.Ed. 297 (1805)). Because this statute of limitations by its own terms does not apply to injunctive and declaratory relief, this action will proceed with possible recovery limited accordingly.

An order in accordance with this opinion has been issued this date.

### ORDER

For the reasons stated in the accompanying memorandum opinion, it is by the Court this 24th day of February, 1995, hereby

ORDERED that defendant's motion for summary judgment is granted in part and denied in part; and it is

ORDERED that judgment for defendant is entered on plaintiff's claim for civil penalties; and it is

ORDERED that defendant's motion for summary judgment on plaintiff's claim for injunctive and declaratory relief is denied; and it is

ORDERED that a status call in this matter is scheduled for March 15, 1995, at 9 a.m. in courtroom 12; and it is

FURTHER ORDERED that counsel in this matter shall meet in person, and not by telephone, at least 5 days prior to the status call to discuss the outstanding issues in this case and the possibility of settlement. It shall be the obligation of plaintiff's counsel to arrange this meeting.