# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-1601

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota |
| | * | |
| Cheryl C. Godbout-Bandal; Bruce | * | |
| A. Rasmussen; Wayne Field; | * | |
| | * | |
| Defendants, | * | |
| | * | [Published] |
| Richard D. Donohoo, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: October 20, 2000

Filed: November 15, 2000

_____

Before HANSEN, MURPHY, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

The district court[1] granted summary judgment to the federal government on its

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

claim for enforcement of an award of civil penalties against defendants for violation of the Change in Bank Control Act, 12 U.S.C. § 1817(j). Defendant Richard D. Donohoo (Donohoo) appeals on the single issue of whether the applicable five-year statute of limitations bars the government's claim. We affirm.

I.

In July, 1990, Donohoo and the other defendants, officers of Capital Bank, inserted $1,000,000 in cash into that institution during the banking crisis, in order to meet the bank's capital requirements. The investment allowed Capital Bank to weather the crisis; but, as it turned out, Donohoo and his cohorts violated the Change in Bank Control Act when they made their investment without first obtaining approval from the Federal Deposit Insurance Corporation (FDIC). See Lindquist & Vennum v. Federal Deposit Ins. Corp., 103 F.3d 1409, 1413-14 (8th Cir. 1997).

The exact details of Donohoo's transgressions are unimportant for purposes of this appeal; however, the following chronology is relevant. In September 1992, the FDIC assessed civil penalties against Donohoo in the amount of $1,000,554.00 for his July, 1990, violation. Donohoo appealed the assessment, and an administrative hearing was held before an administrative law judge (ALJ) in April-May, 1993. In September, 1994, the ALJ issued his Recommended Decision. The FDIC Board of Governors modified the ALJ's decision, and in September, 1995, issued its own decision ordering Donohoo to pay $1,000,554.00. Donohoo appealed the administrative decision to this court; we affirmed the penalty assessment on January 8, 1997. See id. Donohoo then sought a writ of *certiorari* from the Supreme Court, which was denied on October 6, 1997. See Donohoo v. Federal Deposit Ins. Corp., 522 U.S. 821 (1997).

In November, 1998, more than eight years after the commission of the act for which the penalty was assessed, the FDIC commenced this action to enforce the penalty pursuant to 12 U.S.C. § 1818(i). The district court granted the government's

motion for summary judgment on December 20, 1999, rejecting without discussion Donohoo's argument that the government could not collect on the debt because the statute of limitations set forth in 28 U.S.C. § 2462 had run.

II.

Donohoo seeks review of only one issue: whether the district court erred in implicitly finding that the government's claim against him is not barred by the statute of limitations. We review the district court's grant of summary judgment de novo. See Lynn v. Deaconess Med. Ctr.-West Campus, 160 F.3d 484, 486 (8th Cir. 1998).

The government proceeds against Donohoo pursuant to § 1818(i)(1) which allows the "appropriate Federal banking agency" to seek "enforcement of any effective and outstanding notice or order issued under this section" in district court. This statutory provision is not equipped with its own statute of limitations; thus, the general statute of limitations for collection of civil penalties, 28 U.S.C. § 2462, applies. Section 2462 states as follows:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

Donohoo argues that the government's claim for enforcement of the penalties assessed against him by the FDIC is barred by this statute. He asks us to interpret the phrase "claim first accrued" to mean the date of the original violation for which the penalty was assessed, i.e., July, 1990. The government, in contrast, argues that the

claim does not accrue until the administrative proceedings assessing the penalties are completed.

This question appears to be a matter of first impression in our circuit. The circuits are split on when a claim accrues under this statute of limitations. The Fifth Circuit favors Donohoo's approach. See United States v. Core Labs. Inc., 759 F.2d 480 (5th Cir. 1985). The Core court analyzed caselaw arising under the various predecessors to § 2462 and found that "[a] review of these cases clearly demonstrates that the date of the underlying violation has been accepted without question as the date when the claim first accrued, and, therefore, as the date on which the statute began to run." Id. at 482. The court also found support for its position in the legislative history of the Export Administration Act, 50 U.S.C. App. § 2401, the Act pursuant to which the underlying lawsuit was brought. See id. Finally, the court noted that "[p]ractical considerations support this construction. The progress of administrative proceedings is largely within the control of the Government. A limitations period that began to run only after the government concluded its administrative proceedings would thus amount in practice to little or none." Id. at 482-83.

The First Circuit takes the opposite position. See United States v. Meyers, 808 F.2d 912 (1st Cir. 1987). In Meyers, another proceeding under the Export Administration Act, the First Circuit rejected Core's reasoning ("the core of Core," id. at 913). Instead, the court held that where the Act which authorizes the assessment of a penalty provides for an administrative procedure for assessing that penalty, the statute of limitations at § 2462 does not begin to run until "the penalty has first been assessed administratively." Id. at 914. The Meyers court noted the "obvious proposition that a claim for 'enforcement' of an administrative penalty cannot possibly 'accrue' until there is a penalty to be enforced." Id. Because the court found the language of the relevant statutes to be unambiguous, it rejected any resort to statutory construction to aid in interpretation. Id. at 915. Further, the court noted that rather than preventing government abuses, the Fifth Circuit's interpretation could encourage violator abuses

of the administrative system.  If the government has only five years from the date of the violation to assess a penalty and begin collection proceedings, the violator would have great incentive to delay the process as much as possible, hoping that the government's clock would run out before the enforcement proceeding began.  See id. at 919.  The court additionally noted that,

> [o]utside of the Fifth Circuit, no court has ever held that, in a case where an antecedent administrative judgment is a statutory prerequisite to the maintenance of a civil enforcement action, the limitations period on a recovery suit runs from the date of the underlying violation as opposed to the date on which the penalty was administratively imposed.

Id. at 916.

The parties direct us to only one case that has examined the question of when a claim accrues under § 1818.  In that case, the court followed the First Circuit's lead and held that "[t]he government could not bring an action in this court to enforce the penalty until the final decision was issued, . . . and the assessment was not further appealed." United States v. McIntyre, 779 F. Supp. 119, 122 (S.D. Iowa 1991).[2]

The issue has significant consequences.  In this case, under the Fifth Circuit's

---

[2]One other court has considered this question, ironically, in reference to Donohoo himself.  During the course of the enforcement proceedings, Donohoo filed for bankruptcy in Florida, pursuant to Chapter 13 of the Bankruptcy Code. The government protested that the assessment of its fine against Donohoo raised Donohoo's debt beyond the cap for eligibility under Chapter 13.  Donohoo countered by alleging that the government could not collect the penalty, because of the running of the statute of limitations period.  The United States Bankruptcy Court for the Middle District of Florida, following the First Circuit's interpretation, held that "the assessment did not become final until the Supreme Court denied the Debtor's petition for certiorari on October 6, 1997." In Re Donohoo, 243 B.R. 139, 142 (Bankr. M.D. Fla. 1999).

reasoning, the government would have had to commence its collection proceedings by July, 1995; thus, it would now be time-barred from attempting to enforce the penalty against Donohoo. Under the First Circuit's reasoning, however, the action instituted by the government in 1998 would be timely.

We find the First Circuit's reasoning to be more persuasive. We therefore hold that where an Act which authorizes the assessment of a civil penalty also provides for an administrative procedure for assessing that penalty, the statute of limitations period set out in § 2462 will not begin to run until that administrative process has resulted in a final determination.[3]

Our conviction that this is the correct rule is reinforced by our observation that § 1818(i) does not allow the government to begin a collection proceeding until the defendant "fails to pay an assessment after any penalty imposed under this paragraph has become final." 12 U.S.C. § 1818(i)(2)(I)(i). In other words, the government is precluded from bringing an enforcement action until the penalty has been finalized through administrative proceedings. Under the Fifth Circuit's rule, the government could find itself unable to collect on a penalty simply because those proceedings have taken too long. A violator should not be able to escape paying a penalty by dragging his feet through the administrative penalty- assessment process. Thus, we hold that the government's enforcement action is timely.

Affirmed.

---

[3]We need not decide whether an appeal of an administrative decision to the federal courts would be considered part of the administrative penalty-assessment process, for purposes of determining when the limitations period begins to run. Both the date that the final administrative order was entered, and the date the Supreme Court denied review are within five years of the date the government initiated this suit.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.