**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DLS PRECISION FAB LLC, DBA Di-Matrix Precision Manufacturing,
                                 *Petitioner*,

v.

U.S. IMMIGRATION & CUSTOMS ENFORCEMENT; OFFICE OF CHIEF ADMINISTRATIVE HEARING OFFICER; UNITED STATES OF AMERICA,
                                 *Respondents.*

No. 14-71980

DHS No. 13A00019

OPINION

On Petition for Review of an Order of the
Office of Chief Administrative Hearing Officer,
Executive Office for Immigration Review,
Department of Justice

Argued and Submitted January 13, 2017
San Francisco, California

Filed August 7, 2017

Before: J. CLIFFORD WALLACE, RICHARD R. CLIFTON, and MILAN D. SMITH, JR., Circuit Judges.

Per Curiam Opinion;
Partial Concurrence and Partial Dissent by Judge Clifton

## SUMMARY[*]

### Immigration

The panel granted in part and denied in part DLS Precision Fab LLC's petition for review of an administrative law judge's ("ALJ") decision finding DLS liable for 504 violations of 8 U.S.C. § 1324a, which requires employers to verify that their employees are legally authorized to work in the United States and prohibits employers from knowingly continuing to employ aliens who are not authorized to work.

The panel granted the petition as to one violation because the charge was untimely under the statute of limitations. The panel denied the petition as to the other 503 violations, concluding that DLS was not entitled to good faith defenses. The panel also denied the petition as to the ALJ's summary determination of a penalty in the amount of $305,050, concluding that DLS' ability to pay was not a material issue of fact that would preclude summary determination of the penalty amount because it was within the power of the ALJ to decline to consider the factor at all.

Concurring in part and dissenting in part, Judge Clifton disagreed with the majority's conclusion regarding summary determination of the penalty. Judge Clifton wrote that the determination of the penalty on the equivalent of summary judgment was improper because there was a material, unresolved factual issue regarding the ability of DLS to pay the penalty. He would grant the petition as to the amount of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the penalty and remand that issue to the agency for further proceedings.

## COUNSEL

Donald Peder Johnsen (argued), Gallagher & Kennedy P.A., Phoenix, Arizona, for Petitioner.

Suzanne Nicole Nardone (argued), Trial Attorney; Anthony P. Nicastro, Acting Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondents.

## OPINION

PER CURIAM:

Section 274A(b) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1324a(b), requires employers to verify that their employees are legally authorized to work in the United States. Regulations designate use of the Employment Eligibility Verification Form, also known as the "I-9 form," for this purpose. 8 C.F.R. § 274a.2(a)(2). Employers must retain these forms and provide them for inspection by the Department of Homeland Security upon three days' notice. 8 C.F.R. § 274a.2(b)(2)(ii). Section 274A(a)(2) prohibits employers from continuing to employ an alien "knowing the alien is (or has become) an unauthorized alien with respect to such employment." 8 U.S.C. § 1324a(a)(2).

DLS Precision Fab LLC (DLS) petitions for review of the summary decision of the Administrative Law Judge (ALJ),

Office of the Chief Administrative Hearing Officer (OCAHO), which found DLS liable for numerous violations of these sections of the INA and ordered DLS to pay civil money penalties in the total amount of $305,050.

For the most part, we deny DLS's petition, but we grant it in one part and disagree with the ALJ's conclusions in one important respect. With regard to the ALJ's finding that DLS was liable for 504 violations, we conclude that one charge was untimely under the applicable statute of limitations, so that violation cannot stand. We deny the petition for review as to the ALJ's finding of the other 503 violations, and as to the ALJ's determination of the penalty amount.

## I.  Background

DLS is a company located in Phoenix, Arizona, providing custom sheet metal fabrication in a variety of industries. In the late 2000s, DLS grew to about 200 employees because of the expansion of a Department of Defense program. To deal with the sudden growth of its workforce and ensure its compliance with applicable state and federal employment laws, DLS hired a well-credentialed human resources director (the "HR director"). Unbeknownst to the company, however, this individual shirked his responsibility to ensure the company's compliance with the INA to the point, as later described by DLS, "of literally stuffing the government's correspondence in a drawer and never responding."

In November 2009, United States Immigration and Customs Enforcement (ICE) served DLS with a Notice of Inspection and an administrative subpoena. After reviewing DLS's I-9 forms and other relevant business information, ICE served DLS with a Notice of Suspect Documents in January

2010 and a Notice of Intent to Fine in October 2012. Around this time, the Department of Defense program that had fueled DLS's growth was cut back, causing a substantial reduction in DLS's business. DLS consequently reduced the number of its employees from a peak of about 200 to 77 in 2012, 34 in 2013, and 33 at the time of the summary decision proceedings.

In response to the Notice of Intent to Fine, DLS requested a hearing before an ALJ. ICE filed a six-count complaint with OCAHO on January 4, 2013. Counts I-IV alleged that DLS failed to comply with employment verification requirements pursuant to 8 U.S.C. § 1324a(a)(l)(B), and Counts V–VI alleged that DLS continued to employ 15 individuals despite knowing that they were ineligible for employment, in violation of 8 U.S.C. § 1324a(a)(2).

ICE moved for summary decision as to liability for all six counts and requested penalties totaling $495,250.75. The ALJ granted ICE's motion for summary decision, finding DLS liable for 504 of the 508 alleged violations, 489 of which were I-9 paperwork violations and 15 of which involved DLS's continuing employment of ineligible aliens. DLS was ordered to pay civil money penalties in the total amount of $305,050. The ALJ's April 22, 2014 decision became the final agency order on June 21, 2014. DLS timely petitioned for review. *See* 8 U.S.C. §§ 1324a(e)(7), (8).

On May 27, 2016, DLS filed for reorganization and protection under Chapter 11 of the Bankruptcy Code. The bankruptcy proceedings are ongoing. *See In re DLS Precision Fab, LLC*, 2:16-bk-06109-EPB (Bankr. D. Ariz. 2016).

## II.  Standard of Review

Judicial review of an agency decision is narrow.  We will not substitute our judgment for that of the agency.  *See Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989).  Under the Administrative Procedure Act, we may only set aside an agency decision if it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, or if it was taken without observance of procedure required by law.  5 U.S.C. § 706(2)(A), (D); *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011).  "We do not overturn an agency's determination of a civil penalty unless it is either unwarranted in law or unjustified in fact." *Ketchikan Drywall Servs., Inc. v. Immigration & Customs Enf't*, 725 F.3d 1103, 1110 (9th Cir. 2013) (citation and quotation marks omitted).

## III.    Discussion

*A.  The ALJ's Summary Determination of Liability.*

1.  DLS's Good Faith Defense.

DLS argues that the ALJ erred by granting summary decision despite the existence of genuine issues of fact as to DLS's good faith defense to the alleged violations.  There are two types of good faith defenses to liability under 8 U.S.C. § 1324a, but neither is properly available to DLS.

The first defense, which is provided by 8 U.S.C. § 1324a(a)(3), applies only to a charge of knowingly hiring, recruiting, or referring an ineligible alien.  Under that subsection:

> A person or entity that establishes that it has complied in good faith with the [employment verification] requirements of subsection (b) with respect to the hiring, recruiting, or referral for employment of an alien in the United States has established an affirmative defense that the person or entity has not violated paragraph (1)(A) with respect to such hiring, recruiting, or referral.

DLS has not been charged with a violation of the specified subsection, "paragraph (1)(A)," specifically referring to 8 U.S.C. § 1324a(1)(A), "with respect to such hiring, recruiting, or referral." Rather, it has been charged with violations of § 1324a(a)(2), for *continuing* to employ an unauthorized alien, and violations of § 1324a(b), for failing to properly complete, retain, or produce I-9 forms. The good faith defense established in § 1324a(a)(3) does not apply to the violations for which DLS has been cited.

DLS's invocation of the second good faith defense under 8 U.S.C. §1324a(b)(6) fails for a different reason. Section 1324a(b)(6) provides that "a person or entity is considered to have complied with [the employment verification requirements of § 1324a(b)] notwithstanding a technical or procedural failure to meet such requirement if there was a good faith attempt to comply with the requirement." That defense could apply to some of the violations for which DLS was cited, in particular the violations of § 1324a(b) alleged in Counts I–IV for failing to properly complete, retain, or produce I-9 forms. The statute limits this defense, however, to technical or procedural violations, as opposed to substantive violations. *See* 8 U.S.C. § 1324a(b)(6).

DLS concedes that its violations were substantive and does not argue that the good faith defense should apply because the violations were technical or procedural. Instead, DLS contends that the "peculiar facts of this case" justify extending the good faith defense under 8 U.S.C. § 1324a(b)(6) to substantive violations. According to DLS, the "peculiar facts" are that DLS made a good faith effort to comply with the INA's employment requirements by hiring the HR director, but the HR director exhibited bad faith by neglecting his duty to keep DLS compliant.

We are not persuaded by this argument. For one thing, these facts do not strike us particularly peculiar. DLS is not the first employer to hire an employee with the expectation that he or she will comply with the law only to be disappointed, nor is it likely to be the last. More broadly, DLS asks us to disregard the company's responsibility for hiring and supervising its own employees. The HR director was acting as DLS's agent, and his failure to perform his responsibility may properly be imputed to DLS. *See, e.g.*, *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1368 (9th Cir. 1992) (a corporation is responsible for the acts of its employees done within the scope of their employment). We cannot, in any event, effectively rewrite the statute to extend the good faith defense to substantive violations when the statute explicitly limits this good faith defense to technical and procedural violations.

2.   DLS's Statute of Limitations Defense.

DLS argues that the ALJ erred in rejecting its statute of limitations defense under 28 U.S.C. § 2462 as to all of the charged violations. This statute provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty,

or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462. According to DLS, because ICE filed its Complaint on January 4, 2013, any violations prior to January 4, 2008 were barred by the five-year statute of limitations.

Apart from one violation to be discussed in more detail below, the ALJ correctly rejected DLS's statute of limitations defense because DLS failed to properly assert this defense. 28 C.F.R. § 68.9(c) requires "[a]ny respondent contesting any material fact alleged in a complaint [to] file an answer in writing" that includes "[a] statement of the facts supporting each affirmative defense." Although DLS pleaded a generalized statute of limitations defense in its answer, DLS failed to accompany it with a statement of facts, as required by 28 C.F.R. § 68.9(c).

Separately, every charge but one was in fact timely asserted by ICE. "A statute of limitations begins to run on the date on which the plaintiff's claim 'accrues.'" *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). The date of accrual depends on the type of claim asserted. Counts I–IV allege that DLS violated 8 U.S.C. § 1324a(b) by failing to complete and retain its I-9 forms. "[A] paperwork violation continues until it is corrected, or until the employer no longer is required to retain the I-9 form." *United States v. Curran Eng'g Co.*, 7 OCAHO 975, 1997 WL 1051469, at *15 (Oct. 31, 1997). Thus, the five-year limitations period is measured from the date that the company was no longer required to retain the I-9 form. Under 8 U.S.C. § 1324a(b)(3), that was either three years after the date of hire or one year after the date that the given individual's employment was terminated, whichever was later. Based on the dates of hire and of

termination of DLS employees set forth in Counts I–IV, DLS was required to retain an I-9 for every individual beyond the January 4, 2008 date, making every charge in Counts I–IV timely. DLS pointed to no evidence to rebut these dates.

Likewise, for Counts V–VI, which alleged the continuing employment of ineligible aliens, the limitations period is measured from the last day of the ineligible alien's employment. Every charge, except for one involving an employee named Francisco Fernandez, is based on employment that continued past January 4, 2008. Those claims were timely as well.

The one violation that we conclude must be treated differently is a violation in Count V for knowingly continuing to employ Francisco Fernandez. ICE argues that DLS's procedural failure to include a statement of facts also foreclosed DLS's statute of limitations defense as to the violation in Count V involving Francisco Fernandez. There were, however, no material facts in dispute as to this particular charge that required DLS to file its own statement of facts under 28 C.F.R. § 68.9(c)(2). ICE conceded in its own filing that Fernandez had left DLS before January 4, 2008, more than five years before ICE instituted this action. In fact, ICE stated, prior to the summary decision, that "[t]he Department concedes that the violation for Francisco Fernandez, listed above, is outside of the limitations period pursuant to 28 U.S.C. § 2462 and *United States v. Curran Engineering Company, Inc.*"

The ALJ ignored ICE's concession, holding that this claim was timely because "[w]here an administrative proceeding is mandatory, . . . the limitations period in 28 U.S.C. § 2462 should begin to run only after the penalty

has been administratively imposed." That interpretation of the statutory language "when the claim first accrued" is incorrect.

First, a reading of the statute pursuant to which the limitations period begins to run only when the penalty has been imposed would extend the limitations period indefinitely for an administrative proceeding to impose a civil fine or penalty. It could not have been the Congress's intent to start the running of a limitations period only after the action itself was concluded by the imposition of the penalty. That would be akin to saying that a limitations period for a criminal offense, such as theft, did not start to run until the offender had been tried, convicted, and sentenced. In the current context, it would permit ICE to postpone the filing of an action for decades, even centuries, on the theory that the filing would still be timely because the statute of limitations did not begin to run until the action reached a final decision and the penalty had been imposed. A statute of limitations should not be interpreted to render itself null.

The cases that the ALJ relied on for this understanding of 28 U.S.C. § 2462 are unlike the present case. Three of those cases concerned a separate judicial action to enforce a penalty imposed in an earlier administrative suit. *See SEC v. Mohn*, 465 F.3d 647, 653–54 (6th Cir. 2006); *United States v. Godbout-Bandal*, 232 F.3d 637, 639–40 (8th Cir. 2000); *United States v. Meyer*, 808 F.2d 912, 922 (1st Cir. 1987). In that context, the language of § 2462 speaks directly to establish the limitations period for filing an action to collect a previously imposed penalty, to the effect that the limitations period for a subsequent penalty enforcement claim does not begin until the penalty has been imposed. At issue here,

however, is the timeliness of the administrative proceeding that imposed the penalty in the first place.

The additional case cited by the ALJ is similarly distinguishable. In *United States v. DeLeon Valenzuela*, 8 OCAHO 1004, 1998 WL 745982 (1998), the issue was whether a penalty was timely under § 2462 when it was imposed more than five years after the alleged violation, though the action to impose the penalty itself had been timely commenced. *Id*. at *3 ("DeLeon does not allege that this action itself was not timely filed, or 'commenced within five years from the date first accrued,' in the statutory language. Rather, he argues that any penalty I might impose upon him in this action will be uncollectible[.]"). The present case does not involve that scenario, either.

Perhaps most to the point, we have precedent that answers the question of when the limitations period under § 2462 starts running for an administrative proceeding.[1] Although the ALJ stated in reaching her conclusion that "[t]he Ninth Circuit, in which this case arises, does not appear to have addressed the question," we have. In *Federal Election Commission v. Williams*, 104 F.3d 237, 241 (9th Cir. 1996), we measured the limitations period under § 2462 for a Federal Election Campaign Act charge from the day of the

---

[1] We do not owe *Chevron* or other deference to OCAHO precedent regarding the interpretation of § 2462 because Congress did not delegate administrative authority to OCAHO or any particular agency to administer this statute of limitations, which is generally applicable to all federal agencies. *See, e.g.*, *Coghlan v. Nat'l. Transp. Safety Bd.*, 470 F.3d 1300, 1304 (11th Cir. 2006) (concluding that administrative agencies' construction of § 2462 was not entitled to *Chevron* deference because no showing had been made that Congress delegated authority to agencies to implement § 2462).

alleged violation. Although *Williams* involved a different act, there is no reason why § 2462 should be applied any differently for claims under the INA. The purpose of the statute of limitations is the same for both acts: to "promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *CTS Corp. v. Waldburger*, 134 S.Ct. 2175, 2183 (2014) (brackets omitted) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–349 (1944)). This purpose is thwarted when the claim is allowed to go on indefinitely.

There is even OCAHO precedent that specifically relied on *Williams* to measure the limitations period under § 2462 from the date when the violation occurred. *See Curran*, 1997 WL 1051469, at *6 ("The Ninth Circuit clearly has stated its position that the statute of limitations contained in section 2462 starts to run from the date of the underlying violations that gave rise to the penalty assessment proceedings." (citing *Williams*, 104 F.3d at 240)). *Curran* rejected an argument that mirrored the reasoning adopted by the ALJ in this case, including the ALJ's reliance on *Meyer*:

> the event that supposedly commences an action and, thus, halts the running of the limitations period says nothing about what event starts the running of the limitations period. Indeed, the present case is factually dissimilar to *Meyer* in a genuinely relevant manner. In *Meyer*, the action, suit, or proceeding to enforce a civil penalty is a true enforcement proceeding; i.e., the action in question was brought to enforce the payment

> of a civil fine that previously was imposed. *See Meyer*, 808 F.2d at 914.  In the present case, the action, suit, or proceeding to enforce a civil penalty is the administrative action that initially imposes a civil penalty.

*Id.* at *7.

For these reasons, we grant the petition for review of the ALJ's order as to the violation in Count V for Francisco Fernandez because it was untimely under 28 U.S.C. § 2462. We deny the petition with regard to all the other cited violations.

## B.  The ALJ's Summary Determination of Penalty.

In addition to summarily deciding DLS's liability, the ALJ assessed civil money penalties in the total amount of $305,050 for DLS's violations.  DLS argues that genuine issues of fact regarding its ability to pay precluded the ALJ's summary determination of the penalty amount.

The summary decision standard under 28 C.F.R. § 68.38(c) is essentially the same as the standard in civil litigation for a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  "The Administrative Law Judge shall enter a summary decision for either party if the pleadings, affidavits, material obtained by discovery or otherwise, or matters officially noticed show that there is no genuine issue as to any material fact and that a party is entitled to summary decision."  28 C.F.R. § 68.38(c).  At summary decision, "all facts and reasonable inferences to be derived therefrom are to be viewed in the light most favorable to the non-moving party."  *United States v. Primera Enters.,*

*Inc.*, 4 OCAHO 615, 1994 WL 269753, at *2 (Mar. 8, 1994). Under 28 C.F.R. § 68.38(e), if genuine issues of material fact exist, "the Administrative Law Judge shall set the case for an evidentiary hearing."

The "ability to pay" factor, as the name suggests, takes into account an employer's ability to pay the administrative fine. *See United States v. M.T.S. Serv. Corp.*, 3 OCAHO 448, 1992 WL 535585, at *2 (Aug. 26, 1992). The relevant statute, 8 U.S.C. § 1324a(e)(5), sets out five factors that must be considered in setting the amount of the civil penalty. The violator's ability to pay is not one of those five factors; rather, it is a factor that the agency has recognized may also be considered at the ALJ's discretion. *M.T.S. Serv. Corp.*, 3 OCAHO 448, at *2. Assessing an employer's ability to pay allows for consideration of whether a penalty will be so onerous that, instead of deterring future violations and enhancing the probability of future compliance, it will result in the employer having to eliminate jobs or go out of business. *See United States. v. Snack Attack Deli, Inc.*, 10 OCAHO 1137, 2015 WL 5651452, at *9 (Dec. 22, 2010). Here, the ALJ acknowledged this factor and DLS's evidence of its inability to pay the penalty of $495,250.75 proposed by ICE, but ultimately found DLS's evidence did not raise a genuine issue of material fact so as to preclude summary determination of the penalty.

DLS presented the affidavit of its Director of Business Development, stating that the company had no realistic way of paying the proposed penalty because it had undergone severe contraction and was experiencing significant net losses in fiscal year 2013 in the amount of $699,489, and in the first

quarter of fiscal year 2014 in the amount of $469,226. The ALJ found, however, that "[t]he company's cryptic submissions about its ability to pay raise more questions than they answer." The ALJ assessed a total penalty of $305,050.

Ability to pay is not, under the statute, one of the factors that must be considered in setting the amount of the penalty. Because it was within the ALJ's power to decline to consider this factor at all, DLS's ability to pay was not a *material* issue of fact that would preclude summary determination of the penalty amount. *Cf. United States v. Romans Racing Stables, Inc.*, 11 OCAHO 1232, 2014 WL 5513824, at *3 (Oct. 23, 2014) (OCAHO finding that ALJ committed no error by granting summary decision on the penalty fee, despite ALJ's statement that "[i]t [was] difficult to form a clear picture of the company's real current financial status from these documents"). The dissent suggests that because ability to pay could, in some circumstances, affect the outcome of the case, it is necessarily material. What this reasoning fails to acknowledge, however, is that in order for ability to pay to change the outcome, the ALJ must first choose to give the factor some weight in the analysis. She may, *but is not required*, to do so. Here, the ALJ allowed evidence to be introduced regarding DLS's ability to pay, and gave that evidence some apparently nominal consideration, while acknowledging that the DLS's financial circumstances remained less than clear. By moving forward with summary determination of the penalty amount despite ambiguity regarding DLS's ability to pay, the ALJ *effectively* chose to give that factor no weight. We decline to adopt the dissent's apparent view that, once an ALJ acknowledges the existence of a discretionary factor, that factor assumes the status of the statutorily enumerated factors. Given that it was within her

discretion to disregard the factor all together, this does not warrant reversal.**[2]**

DLS also challenges the ALJ's consideration of the statutory factors in assessing the penalties for the paperwork violations.  Under 8 U.S.C. § 1324a(e)(5), an ALJ must consider the following factors when deciding civil money penalties: (1) the size of the employer's business; (2) the employer's good faith; (3) the seriousness of the violations; (4) whether the employee is an unauthorized alien; and (5) the employer's history of previous violations.**[3]**  *Id.*

DLS's ostensible argument is that the ALJ erred by granting summary decision despite fact issues with respect to its good faith, size, and the seriousness of its violations. Remand for further evidence is unnecessary on this ground because the ALJ actually credited DLS's version of the facts

---

**[2]** The dissent cites to an instance in which an ALJ declined to enter summary decision because questions remained regarding a party's ability to pay.  *See United States v. Dominguez*, 1997 WL 751154, at *21 (O.C.A.H.O. Oct. 17, 1997), *modified on other grounds by United States v. Dominguez*, 7 OCAHO 972, 1997 WL 1051466 (Oct. 17, 1997).  The cited matter is entirely consistent with our decision today: Had the ALJ here determined that ability to pay was a material factor, she could have denied the motion for summary determination.  That ALJs in other matters have exercised their discretion to find that ability to pay precludes summary determination does not establish that the ALJ in this matter abused her discretion by implicitly declining to afford any weight to ability to pay.

**[3]** These factors only apply to the assessment of a penalty for a paperwork violation.  8 U.S.C. § 1324a(e)(5).  Penalties for continuing employment violations are assessed in accordance with 8 C.F.R. § 274a.10(b)(1)(ii)(A), which provides monetary ranges, but does not mandate the consideration of any specific factors.

as to its good faith and size, and accordingly reduced the penalty.[4]   The real problem, as far as DLS was concerned, was that the ALJ did not mitigate the penalty enough based on these findings, so DLS would like to introduce more evidence of its good faith and size to convince the ALJ to reduce the penalty even more.  Even DLS's challenge to the seriousness of the violation is not based on any factual dispute as to the kinds of violations, which are clearly established in the record, but rather DLS's disagreement with the ALJ as to their seriousness.  These disputes as to the legal significance of the facts do not merit reversal for the ALJ to reconsider the penalty amount based on new evidence.  DLS does not appeal the other factors.

Nor is reversal warranted because the ALJ abused her discretion in calculating the penalty amount.  The ALJ's downward adjustment was an allowable judgment that fell within the monetary range prescribed in 8 U.S.C. § 1324a(e)(5) ("the order under this subsection shall require the person or entity to pay a civil penalty in an amount of not less than $100 and not more than $1,000 for each individual with respect to whom such violation occurred"), and was reasonably based on the evidence presented by DLS.  *See Bosma v. U.S. Dep't of Agric.*, 754 F.2d 804, 810 (9th Cir. 1984) (noting that administrative penalty will not be

---

**[4]** The ALJ's finding of a lack of bad faith in the penalty phase is not inconsistent with her rejection of DLS's good faith defenses in the liability phase.  As discussed above, good faith defenses were unavailable to DLS at the liability phased based on the types of violations ICE alleged and proved, whereas the government had the burden of proving DLS's lack of good faith at the penalty phase, but failed to do so.  *See United States v. Ideal Transp. Co., Inc.*, 12 OCAHO 1290, 2016 WL 6893641 (Nov. 7, 2016).

overturned unless it is either "unwarranted in law or unjustified in fact").

## IV.    Conclusion

DLS's petition is granted in part and denied in part. We grant the petition as to the decision that there was a violation in regard to the charge in Count V concerning Francisco Fernandez because that charge was untimely under the statute of limitations. We deny the petition as to the other 503 violations, as well as the ALJ's summary determination of the penalty. We remand to OCAHO for further proceedings consistent with this decision.

Each party to bear its own costs.

PETITION GRANTED IN PART, DENIED IN PART; REMANDED FOR FURTHER PROCEEDINGS.

---

CLIFTON, Circuit Judge, concurring in part and dissenting in part:

I agree with and join in the per curiam opinion except for Section III.B., regarding the ALJ's summary determination of the penalty imposed on DLS. On that issue, the majority concludes that the determination of the penalty amount by the ALJ through summary adjudication was proper even though there was an unresolved factual issue regarding the ability of DLS to pay a substantial penalty. I disagree and conclude that the determination of the penalty on the equivalent of summary judgment was improper.

My disagreement with the majority on that subject is ultimately fairly narrow but still significant. I agree with the majority opinion that "[t]he summary decision standard under 28 C.F.R. § 68.38(c) is essentially the same as the standard in civil litigation for a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." Majority at 14. *See Getahun v. O.C.A.H.O.*, 124 F.3d 591, 594 (3d Cir. 1997) ("The standards governing the entry of summary judgment under Fed. R. Civ. P. 56(c) in federal court cases are applied in determining whether summary decision under 28 C.F.R. § 68.38(c) is appropriate in OCAHO cases."). The majority and I agree that ability to pay is not a factor that the ALJ is required to consider under the statute but is a factor that may be considered.[1] *Id*. at 15. And, we agree that the ALJ did not resolve the factual issues regarding the ability of DLS to pay. Instead, the ALJ stated, as accurately reported by the majority opinion at 16, that "[t]he company's cryptic submissions about its ability to pay raise more questions than they answer."

I disagree, however, with the assertion of the majority that the ALJ decided not to consider ability to pay as a factor in determining the penalty imposed on DLS. The majority states, at 16, that the ALJ "chose to give that factor no weight," and, at 15, that she "ultimately found DLS's evidence did not raise a genuine issue of material fact." But the ALJ decision never said either of those things. To the

---

[1] I do not believe that a decision by an ALJ not to consider a factor that is not listed in the statute is something that is unreviewable. The failure to consider such a factor could, in certain circumstances, amount to an abuse of discretion. It is not left entirely to the ALJ's whim to decide what factors should be considered. In this instance, though, the ALJ said that she considered the evidence submitted concerning the ability of DLS to pay.

contrary, the decision, in so many words, said that the evidence on ability to pay was considered and that it raised unresolved factual questions: "The company's cryptic submissions about its ability to pay raise more questions than they answer, *but these have been considered as well*." (Emphasis added.)

More broadly, the majority assumes that the ALJ could disregard the unresolved factual issue because that issue could never be "material" for purposes of precluding summary decision: "Because it was within the ALJ's power to decline to consider this factor at all, DLS's ability to pay was not a *material* issue of fact that would preclude summary determination of the penalty amount." *Id*. at 16 (emphasis in the original). The proposition that factual issues can be disregarded if they pertain to a discretionary factor is not supported by law or logic.

The majority's assertion misunderstands the concept of materiality. The test for materiality is whether the dispute of fact may affect the outcome. "As to materiality, the Supreme Court has held that '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the ALJ considered the evidence regarding the ability of DLS to pay in determining the penalty amount, as she said she did, a factual finding as to the actual ability of DLS to pay was something "that might affect the outcome." If the ALJ had obtained answers to the "questions" to which she referred, she might have found that the company could not pay a penalty in the amount that she imposed, so the

amount of the penalty might have been different. That meant that the factual issue was material. The failure to resolve the dispute over the ability of DLS to pay should have precluded a summary resolution of the penalty amount.

Discretionary factors can be material for summary judgment purposes. *See, e.g.*, *Adams v. Rice*, 531 F.3d 936, 949 (D.C. Cir. 2008) (reversing grant of summary judgment regarding Americans with Disabilities Act claim because genuine issues of material fact existed as to factors court "may" consider but was not required to under 29 C.F.R. § 1630.2(j)); *RP Baking LLC v. Bakery Drivers and Salesmen Loc. 194 and Indus. Pension Fund,* Civ. No. 10-3819 ES, 2012 WL 1079649, at *10–11 (D.N.J. Mar. 30, 2012) (denying summary judgment as to ERISA claim based on existence of genuine issues of fact with respect to two discretionary factors).

The agency involved in this case has itself recognized that disputed factual issues should not be resolved by summary decision. *See, e.g.*, *United States v. Dominguez*, 1997 WL 751154, at *6 (O.C.A.H.O. Oct. 17, 1997), *modified on other grounds by United States v. Dominguez*, 7 OCAHO 972, 1997 WL 1051466 (Oct. 17, 1997) ("Issues such as Respondent's ability to pay the penalty . . . are relevant and are in dispute. It is inappropriate to attempt to resolve these disputed issues by summary disposition. Thus, I conclude that there are genuine issues of material fact that preclude summary disposition of the penalty issue.").

It is telling that the majority does not dispute that discretionary factors can be material for summary judgment

purpose.[2]  It acknowledges the *Dominguez* decision, at 17 n.2, and attempts to distinguish it only with its erroneous assertion that the ALJ decided in the case before us not to give consideration to the ability to pay factor.  That is not what the ALJ said.

   To the contrary, the ALJ was explicit in her decision in explaining how she treated the evidence regarding the ability of DLS to pay.  She recognized that DLS had submitted evidence relevant to that factor but declined the request for a hearing because, in the words of the decision, "the suggestion that a hearing is required as to an issue that is unnecessary to the decision is not one that commands instant assent.  No hearing will be convened."  As for the evidence that had been submitted, the decision continued: "consideration of DLS' economic position as a matter of discretion will be limited to review of the evidence the company presented."

---

[2] It is similarly telling that the majority does not attempt to justify the failure to consider ability to pay in this case.  The evidence submitted by DLS included an affidavit of its Director of Business Development which stated that, in fiscal year 2013, DLS suffered net losses in the amount of $699,489, and in the first quarter of fiscal year 2014, in the amount of $469,226.  ICE offered no evidence to refute this.  The ALJ did not find that statement to be incorrect or incredible.  She simply said that the evidence raised more questions than answers.  She did not find that DLS was capable of paying the penalty of $305,050 that she assessed.  Neither did she explain why the ability of DLS to pay a penalty was not a factor that should be considered.  The majority does not offer any explanation, either.  Although the majority says that it was within the ALJ's discretion to give this factor "zero weight" despite this evidence, we have observed that "[a]n abuse of discretion is . . . discretion exercised to an end not justified by the evidence."  *Rabkin v. Oregon Health Sciences Univ.*, 350 F.3d 967, 977 (9th Cir. 2003).

The decision itself established that the ALJ elected to consider the ability to pay factor, but also that she entirely disregarded the summary decision standard because she viewed the consideration of that factor as discretionary — the same position that the majority tries to disavow. Even though the decision stated the evidentiary submission "raised more questions than they answered," the ALJ closed the door to additional evidence, failed to make any factual finding on the subject, and rendered a summary decision. The majority fails to account for what the ALJ actually said in her decision. Summary judgment is not a route to avoid resolving factual issues that could affect the outcome.

At the summary decision stage, the court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine and material issue that requires further opportunity to present evidence to the trier of fact. *See Anderson*, 477 U.S. at 249. At summary decision, the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. That did not happen here. Based on the available evidence, there was no way for the ALJ to know whether DLS could have paid the amount of the penalty that was imposed. The financial condition of DLS and its ability to pay a substantial penalty presented an unresolved factual issue that should have precluded determination of the amount of the penalty on summary decision.

In my view, the petition for review should be granted as to the amount of the penalty and that issue should be remanded to the agency for further proceedings. I respectfully dissent.